Inge Brauer
Attorney at Law
Bar No. 68701
2240 F Street
San Diego, CA 92102

Tel: (619) 238-1031
Fax: (619) 238-0930

Attorney for Defendant **JUAN APARICIO LOPEZ**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

(HON. A HOWARD MATZ)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No.: CR-08-1281 |
| Plaintiff, ) ) | STATEMENT OF FACTS AND POINTS AND AUTHORITIES IN SUPPORT OF |
| v. ) ) | MOTION TO SUPPRESS EVIDENCE SEIZED IN VIOLATION OF THE |
| **JUAN APARICIO LOPEZ,** ) ) | FOURTH AMENDMENT |
| Defendant. ) ) | Date: February 9, 2009<br>Time: 4:00 p.m. |

**I.**

**STATEMENT OF THE CASE**

A complaint was filed on October 15, 2008, charging Mr. Aparicio Lopez with violation of Title 21, United States Code section 841(a)(1), (b) (1) (A) (ii) (I). He was arraigned on the complaint on October 16, 2008 before Magistrate Judge Arthur Nakazato. A preliminary hearing was scheduled for October 30, 2008, and a Post-Indictment Arraignment was set for November 5, 2008. Both the preliminary hearing and the Post-Indictment Arraignment were set before the Duty Magistrate Judge in Riverside.

Counsel appeared before the Duty Magistrate Judge in Riverside on November 5, 2008, however the case did not appear on calendar and the defendant, who is housed in San Bernardino County Jail, was not produced. Although the Indictment had been filed on October 30, 2008, the

1

Post-Indictment Arraignment was not held until November 10. 2008, before Magistrate Judge Charles F. Eick in Los Angeles.  On that date, Mr. Aparicio Lopez entered a plea of not guilty to a single count of violation of 21 U.S.C. sections 841(a)(1), (b) (A).

## II.

## STATEMENT OF FACTS

This statement of facts is derived  from 19 pages of discovery received from the government, as well as an affidavit of ICE agent Raul Fernandez, in support of the complaint. It is subject to change in the event more information is received.

On October 14, 2008, at approximately 12:00PM, Mr. Aparicio Lopez was traveling northbound on Interstate 15, north of the immigration checkpoint.  He was driving a white Ford F-250 with Baja, California license plates.  Border Patrol Agent Del Toro was traveling in a marked border patrol car in the same direction in the number four lane.  While checking her rear view mirror, agent Del Toro saw Mr. Aparicio Lopez's vehicle driving in the number three lane. She decided to slow down and let Mr. Aparicio Lopez's vehicle pass because she wanted to take a better look at the vehicle.  According to agent Del Toro, Mr. Aparicio Lopez also slowed down until he finally passed the agent's vehicle and the agent pulled behind his vehicle.  According to agent Del Toro, as Mr. Aparicio Lopez passed her vehicle, he "appeared rigid and nervous and was gripping the steering wheel tightly".

After agent Del Toro pulled behind Mr. Aparicio Lopez, he ran his fingers through his hair a couple of times and looked to his left.  He also kept looking in the rear view mirror.  The agent ran a 72 hour lane check on the license plate and found that Mr. Aparicio Lopez's vehicle had entered the United States at the Calexico Port of Entry earlier that morning.  The agent activated her emergency lights and stopped Mr. Aparicio Lopez's vehicle in order to perform an immigration inspection.  Agent Del Toro questioned Mr. Aparicio Lopez as to his destination, the purpose of his trip and what type of business he was engaged in.  According to the agent, Mr. Aparicio Lopez became increasingly nervous during the agent's interrogation.  During agent Del

Toro's questioning of Mr. Aparicio Lopez, she noticed a DHS/CPB decal hanging from his neck. Mr. Aparicio Lopez stated that it was a truck driver's pass and displayed his I-94 with a B1/B2 visa (a visitor's visa for business or pleasure).

Because of Mr. Aparicio Lopez's nervousness, agent Del Toro felt compelled to call for a K-9 for assistance. When the K-9 officer arrived, he obtained consent from to search from Mr. Aparicio Lopez and the dog alerted to the rear seat. Eventually 28 packages containing 80.2 pounds of cocaine were found concealed in an after market modification of the seats. Mr. Aparicio Lopez was thereupon arrested.

During processing, Mr. Aparicio Lopez stated that his truck had been stolen from him a few days prior, that he found the truck and repossessed it. He was then confronted by several men with guns who threatened him and told him that he had to deliver the vehicle to Perris, California,, or serious harm would come to him and his family.

### III.

### ARGUMENT

**A.  This Court Should Suppress Evidence Seized In Violation of the Fourth Amendment**

The Fourth Amendment's prohibition of unreasonable searches and seizures extends to seizures of the person and brief investigatory stops of vehicles. See United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975). An officer may not detain a motorist without "a particularized and objective bases for suspecting the particular person stopped of criminal activity." United States v. Cortez, 449 U.S. 411, 417-418 (1981). This "objective basis, or 'reasonable suspicion' must consist of 'specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity.'" United States v. Garcia-Camacho, 53 F.3d 244, 246 (9th Cir. 1995) (citations omitted); accord United States v. Sigmond-Ballesteros, 285 F.3d 1117, 1120 (9th Cir. 2002) (finding that district court erred in finding that vehicle stop was unconstitutional).

In the instant case, the arresting officer did not have reasonable suspicion to stop Mr.

Aparicio Lopez and question him about smuggling activities. The arresting agent's alleged justification for the stop of the car rests almost entirely on observations made of Mr. Aparicio Lopez driving his vehicle in a lawful manner on a highway.  Neither this nor any other supposed justification – including the alleged nervousness – made by the arresting agent support the stop of the vehicle Mr. Aparicio Lopez.  Because the agents did not have reasonable suspicion to believe that he committed any offense, Mr. Aparicio Lopez's detention was unconstitutional.

Moreover, even if the government can prove that the initial detention of Mr. Aparicio Lopez was justified, that detention was impermissibly extended before the officer searched the vehicle for contraband and located the drugs.  See Illinois v. Caballes, 543 U.S. 405, 407 (2005). Indeed, an investigatory stop may "last no longer than is necessary to effectuate the purpose of the stop." Florida v. Royer, 460 U.S. 491, 500 (1983).  Prolonged detention, unrelated to the purpose of the initial stop, must be supported by reasonable suspicion.  United States v. Chavez-Valenzuela, 268 F.3d 719, 725 (9th Cir. 2001), overruled on other grounds by United States v. Mendez, 476 F.3d 1077, 1080 (9th Cir. 2007)).  Nervousness, including trembling hands and avoiding eye contact, does not amount to such suspicion.  Id.

**B.     This Court Should Not Admit Evidence Seized from Mr. Aparicio Lopez's vehicle the Government Has Failed to Establish Probable Cause for the Search.**

A positive alert resulting from a canine sniff of a defendant's personal belongings may furnish the probable cause necessary for continued perusal and detention of an individual and his belongings.  See United States v. Lingenfelter, 997 F.2d 632, 639 (9th Cir. 1993); United States v. Mondello, 927 F.2d 1463, 1471 (9th Cir. 1991).  However, a validly conducted dog sniff can supply the probable cause necessary only if sufficient reliability of the dog's qualifications is established by the application for the warrant.  See Lingenfelter, 997 F.2d at 639; See also United States v. Fernandez, 772 F.2d 495, 497 (9th Cir. 1985) (citing United States v. Spetz, 721 F. 2d 1457 (9th Cir. 1983).  The Ninth Circuit court mandates the government to provide proof of the qualifications of the dog used for drug-detection.  See United States v. Cedano-Arellano, 332 F.3d 568 (9th Cir. 2003).  Moreover, the government must demonstrate that the dog's alert

to the presence of narcotics suggests an individual's current involvement in narcotics trafficking activities, rather than the individual's past involvement in drug trafficking or drug use. See, e.g., United States v. $191,910.00 in U.S. Currency, 16 F.3d 1051, 1062 n.21 (9th Cir. 1994), superseded by statute on other grounds as stated in United States v. $493, 850.00 in U.S. Currency, 518 F.3d 1159, 1164 (9th Cir. 2008) (noting narcotics-detection dogs' propensity to alert to the past presence of narcotics residue, rather than the current existence of contraband, in contaminated bills of paper money).  Absent evidence of the dog's reliability, or the dog's tendency to alert to the current, as opposed to past, presence of narcotics, information regarding a positive dog alert is of little, if any, value, in determining whether probable cause existed for a search resulting in the seizure of contraband. United States v. Fernandez, 772 F.2d at 497 (citing United States v.Spetz, 721 F.2d 1457, 1464 (9th Cir. 1983)).

      The government may demonstrate a narcotics-detecting canine's reliability in several ways.  First, a corroboration of a narcotics-detection dog's positive alert to the presence of narcotics through use of another narcotics-detection may furnish sufficient indicia of reliability to support a finding of probable cause.  Second, a dog's extensive training in the detection of narcotics and a dog's past record of accuracy in narcotics detection may support a finding of reliability and may thus justify the issuance of a search warrant. See Lingenfelter, 997 F.2d at 639 (stating that narcotics-detection dog's 300 hours of training in narcotics detection and record of success in approximately 500 investigations, including evidence that the dog "has never given a false start or failed to detect the drug," supported a finding of the dog's reliability); See also Robert C. Bird, An Examination of the Training and Reliability of the Narcotics Detection Dog, 85 Ky. L.J. 405, 421-22, 425 (1997) (citing a dog's formal training and accuracy rate as indicia of reliability); United States v. Ludwig, 10 F.3d 1523, 1528 (10th Cir. 1993) (concluding the same)).  Third, the circumstances under which the dog alerted to the presence of contraband, including the handler's interpretation of a dog's signals, weather conditions and the dog's health, may reflect the reliability of a particular sniffing operation. Ludwig, 10 F.3d at 1528; Bird, 85

Ky. L.J. at 423.

In the present case, Border Patrol agents used a narcotics-detection dog to peruse the exterior and interior of Mr. Aparicio Lopez's vehicle. The use of the dog resulted in a positive alert and a subsequent search of the vehicle, revealing the seized evidence. At no point, however, did the agents make any determination regarding the dog's reliability. The government, as well, has made no showing of the dog's reliability to support its contention that sufficient justification existed for the use of the canine. In the absence of a showing of the dog's reliability, then, the dog's positive alert to the presence of controlled substances does not furnish the probable cause necessary to support the continued detention of Mr. Aparicio Lopez's vehicle. Thus, any evidence derived from the use of the narcotics-detection dog should be suppressed.

As a consequence, all evidence and the fruits of the unconstitutional detention (*e.g.*, statements, all evidence) must be suppressed. See Wong Sun v. United States, 371 U.S. 471 (1963); see also United States v. Romero-Bustamente, 337 F.3d 1104 (9th Cir. 2003) (finding Fourth Amendment violation, suppressing alien material witnesses, and requiring dismissal of indictment). This Court should accordingly grant the motion.

## **CONCLUSION**

Defendant respectfully requests that the above motions be granted.

Dated:                                              Respectfully submitted,

                                                     s/ Inge Brauer
                                                    Inge Brauer
                                                    Attorney for Defendant
                                                    JUAN APARICIO LOPEZ